IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**MATTHEW A. WENDT**                                                                                   **PLAINTIFF**

**V.**                                        **CASE NO. 5:20-CV-5150**

**FAYETTEVILLE SCHOOL DISTRICT
NO. 1 OF WASHINGTON COUNTY,
ARKANSAS**                                                                                                **DEFENDANT**

**MEMORANDUM OPINION AND ORDER
GRANTING MOTION TO DISMISS**

Defendant Fayetteville School District No. 1 of Washington County, Arkansas ("the District") moves to dismiss Plaintiff Matthew A. Wendt's Amended Complaint for Breach of Contract. *See* Docs. 16 & 17. Mr. Wendt did not respond to the District's Motion. On November 30, 2020, the Court held a case management hearing in this matter and permitted oral argument on the pending Motion despite Plaintiff's failure to file a timely response. The Court has carefully considered the merits of the Motion to Dismiss and finds that the Motion (Doc. 16) should be **GRANTED**.

**I. BACKGROUND**

The following facts are taken from the Amended Complaint (Doc. 14), the documents attached thereto and incorporated by reference, and the public record. Mr. Wendt was hired as the superintendent of the Fayetteville School District beginning January 26, 2016. Pursuant to the Amended and Restated Superintendent Contract of Employment ("the Contract"), adopted on January 25, 2018, the parties agreed that his employment would continue through June 30, 2021, subject to the terms of the Contract. *See* Doc. 14-1. In September 2017, Mr. Wendt began a consensual sexual relationship with a subordinate employee, Shae Newman. The relationship ended in the early months

of 2018, and Ms. Newman subsequently notified the school board, through counsel, that Mr. Wendt had sexually harassed her.  An attorney for the District, Chris Lawson, began an investigation into the allegation.  On April 8, 2018, Mr. Wendt was placed on administrative leave.  Ten days later, the school board met to consider Ms. Newman's allegations and potential disciplinary action against Mr. Wendt and informed him that he would have an opportunity to address the board.  Then on April 25, 2018, counsel for the District, Susan Keller Kendall, sent a letter to Mr. Wendt's counsel notifying Mr. Wendt that the District was considering terminating his employment for "[o]ffensive conduct and derogatory communication with a female subordinate employee (Shae Newman)" in violation of District Policy 4180 – Policy on Sexual Harassment, District Policy 2.1 – Duties of the Superintendent, and Article 3 of the Contract.  (Doc. 14, ¶ 59; Doc. 16-1, pp. 36–37).  In May 2018, Mr. Wendt was provided with documents from the board's investigation, and a board meeting was set for June 18.  On May 25, Ms. Newman filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC").  Mr. Wendt waived a hearing with the board, and at the June 18 meeting, Mr. Wendt's Contract was terminated.

On September 27, 2018, Mr. Wendt filed a complaint in Washington County Circuit Court claiming that the District breached the Contract.  The Court will refer to these proceedings as *Wendt I*.  Among other allegations, Mr. Wendt argued in *Wendt I* that the District could not take the position that he was fired for violating Policy 4180 when it had argued before the EEOC that Ms. Newman was not a victim of sexual harassment as defined by Title VII.  Mr. Wendt further asserted that the alleged violation of Policy 4180 was not a basis for the District to terminate the Contract because the Contract enumerates

2

only one circumstance that would give rise to unilateral termination for cause.

The District filed a motion to dismiss the complaint in *Wendt I*. Mr. Wendt responded, and the District replied. The state court then held a hearing and granted the motion to dismiss from the bench following oral argument. On March 19, 2019, the state court entered an order dismissing the case without prejudice.

In August of the following year, Mr. Wendt filed a complaint in this Court. The District filed a motion to dismiss, and instead of responding, Mr. Wendt filed the operative Amended Complaint. The Amended Complaint alleges that the District breached the Contract by terminating the Contract despite the fact that Mr. Wendt "had completed satisfactory service up to and including that date and stood ready, willing and able to complete the natural term of this employment." (Doc. 14, ¶ 158). Mr. Wendt further asserts that the "allegations against Plaintiff as set forth in the April 25, 2018 letter from Susan Kendall to Elizabeth Murray were insufficient to establish a claim of sexual harassment as that term is defined in Board Policy 4180," *id.* at ¶ 159, and that the same allegations "are insufficient for unilateral termination of Plaintiff's Contract for cause." *Id.* at ¶ 160.

The District now moves to dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, asserting that issues central to Mr. Wendt's claim before this Court were decided by the state court in *Wendt I* and that principles of issue preclusion bar relitigation of those issues. As a result, the Amended Complaint fails to state a claim for breach of contract. In the alternative, the District argues that Mr. Wendt's Amended Complaint still fails to state a plausible claim for relief even if res judicata does not bar any part of his claim.

3

## II.  LEGAL STANDARD

To survive a motion to dismiss, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  In ruling on a motion to dismiss, the court must "accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the nonmoving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quotation omitted).  However, a court does not "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

Given this standard, the court generally considers only the pleadings in ruling on a motion to dismiss.  However, where appropriate, the court may also consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, Fed. Practice & Proc. § 1357 (3d ed. 2004)); *see also Germain Real Estate Co., LLC v. HCH Toyota, LLC,* 778 F.3d 692, 695 (8th Cir. 2015) ("In [determining the preclusive effect of state-court proceedings on a motion to dismiss], we have considered certain matters of public record—the state-court hearing transcripts and order—as well as

4

documents that are necessarily embraced by the federal complaint . . . ."); *Knutson v. City of Fargo*, 600 F.3d 992, 1000 (8th Cir. 2010) ("[W]e see no reason why the District Court, like this Court, could not take judicial notice of the publicly available state-court argument, particularly where the issue at hand is possible preclusion of a federal claim as a result of those same state-court proceedings.").

"Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must 'give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged.'" *Edwards v. City of Jonesboro*, 645 .3d 1014, 1019 (8th Cir. 2011) (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982)). Under Arkansas law, collateral estoppel, also known as issue preclusion, "bars relitigation of issues of law or fact previously litigated, provided that the party against whom the earlier decision is being asserted had a full and fair opportunity to litigate the issue in question and that the issue was essential to the judgment." *Graham v. Cawthorn*, 427 S.W.3d 34, 43 (Ark. 2013). For collateral estoppel to apply, "(1) the issue sought to be precluded must be the same as that involved in the prior litigation, (2) the issue must have been actually litigated, (3) the issue must have been determined by a valid and final judgment, and (4) the determination must have been essential to the judgment." *Id.*

### III.  DISCUSSION

The Court finds that the prerequisites for issue preclusion are satisfied as to several key issues underlying Mr. Wendt's claim for breach of contract before this Court. The material questions of fact and law in this matter were also litigated before the state court in *Wendt I*. In his state-court complaint, Mr. Wendt alleged that the District breached

5

the Contract by wrongfully terminating him for violation of Policy 4180. Mr. Wendt argued that since the District took the position in other fora that his conduct was not sexual harassment, it could not use sexual harassment as a basis for his termination. *See* Doc. 16-4, p. 5. Mr. Wendt also argued that even if he violated Policy 4180, he could not be terminated for cause under the Contract except for issues related to Arkansas's fiscal distress statute, Arkansas Code § 6-17-301. *Id.* at p. 6. In moving to dismiss *Wendt I*, the District asserted that Mr. Wendt violated Policy 4180, and his contract could be terminated as a consequence of such behavior.

The state court reached conclusions about these issues that were essential to its decision to dismiss the case. The order in *Wendt I* refers to "the reasons stated from the bench at the hearing" and the "legal arguments and facts presented to the Court by way of the parties' pleadings" as the basis for dismissing the complaint. At the hearing, the state court offered the following explanation for granting the motion to dismiss. First, the court observed that Policy "4180 appears to be, in the court's opinion, incorporated into the contract." (Doc. 16-6, p. 41). In light of this, the state court concluded:

> Under the terms of the contract[,] the Board determined[,] in part because of the relationship and all that was done within that relationship, he could not adequately fulfill personnel requirements of the superintendent, including those duties—including, but not limited to Article 3, as well as 2.1 of the duties of the superintendent[—]while he was in a sexual relationship with said personnel who reported directly to him. The Board has the discretion and authority, and they exercised it. Since Policy 4180 is incorporated into the contract, the derogatory comments, requests of sexually oriented language, all would be a part of why he was terminated. . . . Ms. Newman was going forward on a particular claim. The Board stated we're not going along with that claim but here are the other grounds. The one body of documents can have more than one conclusion and I believe that's what they did. And I don't believe there are facts to dispute that, or no facts pled that I found dispute that, so the court will grant the Motion to Dismiss.

*Id.* at p. 43–44.

The same issues are now before this Court. Mr. Wendt again brings a claim for breach of contract, relying on the argument that his conduct towards Ms. Newman did not violate Policy 4180 and that even if it did, such a violation was insufficient grounds for his termination. *See* Doc. 14, ¶¶ 162 & 163. Rather, Mr. Wendt asserts again that his contract could only be terminated for cause for conduct described in Arkansas Code § 6-17-301. *Id.* at ¶ 98. Thus, the same issues litigated in *Wendt I* and essential to the state court's decision to dismiss the case are material to this action.

At the case management hearing before this Court, Mr. Wendt asserted that the applicability of the "doctrine of inconsistent positions" was not fully and fairly litigated in *Wendt I*. In responding to the EEOC complaint, the District took the position that Mr. Wendt's conduct towards Ms. Newman was not sexual harassment. Therefore, Mr. Wendt argues, it was inconsistent for the District to claim that it fired Mr. Wendt for violating the sexual harassment policy, especially since the complaint procedures of Policy 4180 were never initiated. In particular, Mr. Wendt asserted that the district failed to explain why his conduct was not sexual harassment under Title VII but did violate Policy 4180. Mr. Wendt concluded, "we specifically plead in our complaint that 4180 and Title VII are ostensibly the same and the same policy."

While it is true that Mr. Wendt did not specifically invoke the "doctrine of inconsistent positions" in *Wendt I*, the issue of the District's inconsistent positions on whether Mr. Wendt's conduct constituted sexual harassment was central to the arguments made before the state court. In his state-court complaint, Mr. Wendt emphasized that "the Lawson Investigation determined that there was no basis for

7

Newman's 'sexual harassment' claim and a violation of Title VII." Doc. 16-1, ¶ 12. The state-court complaint went on to allege that Mr. Wendt was nevertheless terminated for sexual harassment "without any explanation by [the District] of a change in any facts upon which the Lawson Investigation found no such action to exist as of March 30, 2018." *Id.* at ¶ 31. Rather, Mr. Wendt alleged, after terminating him for sexual harassment per the April 25, 2018 Letter, the District "has now come 'full circle'" and in "two separate legal proceedings based upon the Lawson Investigation, [the District] now takes the position that the allegations of Newman did not amount to 'sexual harassment.'" *Id.* at ¶ 32. The state-court complaint quotes extensively from the District's response to the EEOC complaint, underscoring the District's position before the EEOC that no sexual harassment occurred as defined by Title VII. *Id.* at ¶¶ 34–36. Paragraph 37 of the complaint in *Wendt I* makes the precise argument Mr. Wendt makes here: that the District's attempt to distinguish sexual harassment under Title VII and Policy 4180 "is an attempted distinction without a difference," that "[t]he prohibited conduct categorized as 'sexual harassment' is virtually identical under both Policy No. 4180 and Title VII," and that in arguing that there was no claim for sexual harassment under Title VII, the District was "denying the existence of that which it used to terminate Plaintiff." *Id.* at ¶ 37.

Mr. Wendt reiterated this argument in opposing the District's motion to dismiss in *Wendt I*, emphasizing that "the Complaint alleges that [the District] itself believed that Plaintiff did not engage in sexual harassment," and disputing that "there can be a distinction between behavior that constitutes Title VII sexual harassment and behavior that violates an individual employer's sexual harassment policy." (Doc. 16-4, p. 4). Mr. Wendt asserted that it was "improper at this stage of the litigation for [the District] to ask

8

the Court to adopt its view of the facts that Plaintiff violated [the District's] Policy 4180 when it admits he did not violate Title VII." *Id.*

Finally, this issue was a topic of argument during the state-court hearing. The District noted that Mr. Wendt "spends a lot of time in his Complaint and his Response to the Motion to Dismiss trying to say that there's no distinction between the Board's continued stance that while the District does not have liability under Title VII, the Board believed that Wendt violated the policy against harassment." (Doc. 16-6, p. 5). However, the District argued, "[t]here's nothing that prohibits an employer from establishing its own policies and its own practice that tolerate less than what Title VII might allow[,] and this is an important distinction between policy violation and a violation under Title VII." *Id.* at p. 6. The District took the position that it "can argue . . . that it does not have liability under Title VII, but that Dr. Wendt did commit a policy violation with respect to the harassment policy of the District." *Id.* at p. 7. In response, Mr. Wendt argued that the District "expresses sexual harassment schizophrenia," *id.* at p. 10, and highlighted the District's allegedly inconsistent positions by arguing, "you have got one body of evidence, you've got one body of documents and if it's the truth one place, it's the truth somewhere else. I don't care what arena you're in. If you want to terminate Matt Wendt, it's true. If you want to defend against Shea Newman, it's not true." *Id.* at p. 15.

After considering the arguments presented by the parties in briefing and oral argument, the state court concluded that "Ms. Newman was going forward on a particular claim. The Board stated we're not going along with that claim but here are the other grounds. The one body of documents can have more than one conclusion and I believe that's what they did." *Id.* at p. 44. Thus, this Court is persuaded that though he never

9

invoked the specific "doctrine of inconsistent positions," Mr. Wendt had a full and fair opportunity to argue the substance of that issue to the state court, which rejected the argument in making its ruling on the motion to dismiss in *Wendt I*. Instead, the state court determined, essential to its decision to dismiss the state-court complaint, that the same body of facts could support a finding of sexual harassment under Policy 4180 without supporting a finding of sexual harassment pursuant to Title VII, and therefore the District had not taken inconsistent positions.[1]

The remaining question (though not one that Mr. Wendt addressed during oral argument) is whether a dismissal without prejudice can be "a valid and final judgment" for the purposes of issue preclusion under Arkansas law. The Eighth Circuit confronted this question in 2015 and observed that "Arkansas courts have not addressed the precise question raised in this case: When a state court decides certain issues and dismisses a complaint without prejudice for failure to state facts upon which relief could be granted, *see* Ark. R. Civ. P. 12(b)(6), can the judgment of dismissal constitute a final judgment for purposes of issue preclusion?" *Germain Real Estate*, 778 F.3d at 695–96. Where there are no state cases on point, the federal court's "role is to predict how the state supreme court would rule if faced with the issue before us." *Id.* at 696 (quoting *Northland Cas. Co. v. Meeks*, 540 F.3d 869, 875 (8th Cir. 2008) (modification adopted)). Based on its reading of Arkansas case law, the Eighth Circuit concluded that "the Arkansas Supreme Court would hold that the state-court judgment in this case was sufficiently firm to be considered

---

[1] In light of this, the three cases to which Mr. Wendt's counsel directed this Court during the hearing held on November 30, which each elaborate on the doctrine of inconsistent positions, are inapplicable here. *See Jackson v. Smiley Sawmill, LLC*, 576 S.W.3d 43 (Ark. Ct. App. 2019); *Powell v. Lane*, 289 S.W.3d 440 (Ark. 2008); and *Dupwe v. Wallace*, 140 S.W.2d 464 (Ark. 2004).

final for purposes of issue preclusion." *Id.* The Eighth Circuit observed that the issues were briefed before the state court and oral argument was held, the transcripts of which "make clear that the parties were fully heard and the court was familiar with the relevant provisions" of the disputed contract. The Eighth Circuit also observed that "[e]ven though the case was dismissed without prejudice, [the plaintiff] could have appealed from the judgment." *Id.*

These considerations lead to the same conclusion in the case at bar. As described above, the issues were fully briefed and litigated, and the transcript of the state-court hearing in *Wendt I* makes clear that the state court explicitly addressed the issues the District argues should be given preclusive effect. Mr. Wendt could have appealed the decision of the state court but chose not to. Based on the record before it, this Court is satisfied that Mr. Wendt had a full and fair opportunity to litigate in *Wendt I* whether a violation of Policy 4180 would breach the Contract and whether his conduct violated the Policy. Therefore, collateral estoppel prevents him from relitigating those issues here.

The Court agrees with the District that the subsequent decision of the state court of appeals in *Duggar v. City of Springdale*, 599 S.W.3d 672 (Ark. Ct. App. 2020), does not dictate a different result. In *Duggar*, the Arkansas Court of Appeals held that a prior dismissal without prejudice by a federal district court—this Court, in fact—did not have preclusive effect in a related case subsequently filed in state court. The factors that support giving preclusive effect to particular issues, however, require close analysis of the specific record before the court. This Court does not read *Duggar* to hinge purely on the fact that the plaintiff's prior federal lawsuit was dismissed without prejudice. Rather, the court determined in *Duggar* that, based on the record before it, the plaintiff "did not

11

have a full and fair opportunity to litigate the issue in question, and therefore the application of res judicata was not proper." 599 S.W.3d at 681. Here, in contrast, the Court is confident that the factors supporting issue preclusion are satisfied. Were the Court to proceed to the merits of whether, for example, Policy 4180 is incorporated into Mr. Wendt's contract or whether conduct that did not violate Title VII could still violate Policy 4180, it would run the risk of reaching a result inconsistent with the earlier decision by the state court, undermining principles of comity and the purposes of preclusion. *See, e.g.*, *John Cheeseman Trucking, Inc. v. Pinson*, 855 S.W.2d 941, 943 (Ark. 1993) ("In today's complex litigation involving multiple parties arising from one occurrence, it makes no sense to re-litigate the same issue between the same parties with the possibility of inconsistent results. Once an issue has been litigated in a fair forum, the results should be binding."); *Crockett v. C.A.G. Invs., Inc.*, 381 S.W.3d 793, 799 (Ark. 2011) ("The true reason for holding an issue to be barred is . . . to put an end to litigation by preventing a party who has had one fair trial on a matter from relitigating the matter a second time.") (citing *Francis v. Francis*, 31 S.W.3d 841, 845 (2000)).

Giving preclusive effect to the state court's conclusion in *Wendt I* that Policy 4180 is incorporated into the Contract and that Mr. Wendt's conduct violated the Policy, and thereby the terms of the Contract, necessarily leads this Court to find that the Amended Complaint fails to state a claim for breach of contract and must be dismissed.[2]

---

[2] During this Court's case management hearing, Mr. Wendt also made passing reference to a second issue he asserted was not fully and fairly litigated in *Wendt I*, "the fact that [the state court] never looked at the whole of policy 4180 which also leads us to policy 4102 and 4540." He did not elaborate on this point, but the Court infers from references to Policy 4102 in the Amended Complaint that Mr. Wendt was referring to his allegation that he could not be fired under Policy 4180 because the District failed to follow the procedures of that policy and of Policy 4102, the Policy for Handling Professional

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the District's Motion to Dismiss (Doc. 16) is **GRANTED**. The case is **DISMISSED WITH PREJUDICE**, and judgment will enter contemporaneously with this order.

**IT IS SO ORDERED** on this 4th day of December, 2020.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

Disagreements. *See* Doc. 14, ¶¶ 43–48 & 108–115; Doc. 14-5.

As an initial matter, the Court notes that there was significant discussion in *Wendt I* of the District's alleged failure to follow its own procedures—that it failed to abide by the confidentiality provision of Policy 4180, *see* Doc. 16-6, p. 12, and that the procedure it used to terminate the Contract was improper even if the District had cause to terminate Mr. Wendt, *see id.* at pp. 30–34—and the state court rejected those arguments as not relevant to the cause of termination. *See id.* at 41. Even if the procedural issues litigated in *Wendt I* are not the same procedural issues raised before this Court, however, Mr. Wendt has still failed to state a claim for which relief can be granted.

Mr. Wendt alleges in the Amended Complaint that "[t]he District failed to comply with either Sections VI or VII or of the provisions of Policy 4102 in this case, to satisfy the procedural due process requirements owed Plaintiff under Policy 4180." (Doc. 14, ¶ 48). But the allegation that the procedural due process requirements owed to him were not satisfied is a legal conclusion, not a statement of fact, and the Court is not required to accept it as true in considering a motion to dismiss. Upon review of Policies 4180 and 4102, which are attached to the pleadings and incorporated by reference, the Court makes several observations that cause it to disagree with Mr. Wendt's legal conclusion. First, Policy 4102 applies specifically to teachers, and there are no facts pleaded to allege that the policy applied to Ms. Newman in her administrative role. *See id.* at ¶ 44. Second, Section VIII of Policy 4180 incorporates only the appeal procedures of Policies 4102 and 4540 and expressly excludes situations where the disciplinary action is termination. *See* Doc. 14-3, p. 3. The fact that Policy 4180 lays out its own complaint, reporting, and investigation procedure suggests that the grievance procedures of 4102 and 4540 are not relevant beyond the limited express incorporation. Nor is it reasonable for the Court to infer that the District could not respond to an allegation of sexual harassment that came to it in a manner other than the recommended complaint procedure in Policy 4180 or unfolded in a manner other than the investigative procedure outlined therein because of other developments, such as related legal action. Ultimately, Mr. Wendt has not brought a claim for violation of procedural due process, and the factual allegations regarding the procedures followed by the district do not support a claim for breach of contract, the only claim for relief made in the Amended Complaint.

13